UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISON

In re:                                                    Case No.: 9:10-bk-20101-BSS

                                                          Chapter 11

Linda K. Yerger,

        Debtor.

_____/

Linda K. Yerger,

        Plaintiff

v.                                                        Adv. Pro. No. 9:11-ap-00378-BSS

RBC (USA) Bank, N.A.,

        Defendant.

_____/

### MEMORANDUM OPINION

        This case came on for trial on February 7, 2012 on the Plaintiff's Complaint (Doc. 1) and

the Defendant's Answer (Doc. 13).  Plaintiff alleged various violations of the Truth in Lending

Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, including the Home Ownership and Equity Protection

Act of 1994 ("HOEPA"), which is codified at § 1639 of TILA.[1]  Plaintiff also alleged violations

of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a).  For the reasons

explained below, the Court finds that the loan transaction from which Plaintiff's claims arise is

not subject to HOEPA.  Therefore, Plaintiff's HOEPA claims must fail.  Additionally, the Court

finds that all of Plaintiff's TILA claims, including the HOEPA claims, are time-barred by the

applicable statute of limitations.  Finally, with respect to Plaintiff's FTC Act claims, the Court

---

[1] HOEPA is a specific subset of TILA.  Congress amended TILA by adding HOEPA (§ 1639) to the overall TILA
legislation.  However, HOEPA excludes from its coverage certain types of transactions.  As a result, and as is the
case here, a loan may be subject to the general provisions of TILA but not the specific HOEPA provision.

finds that the FTC Act does not provide individuals, like Plaintiff, a private right of action to enforce alleged FTC Act violations.  Accordingly, the Court finds in favor of Defendant on all counts and will enter judgment to that effect.

## Facts

On July 6, 2005, Linda Yerger ("Borrower") and her husband executed a residential sales contract to purchase the improved real property located at 3455 Gin Lane in Naples, Florida for $3,800,000.  The contract required Borrower to deposit $50,000 at the time the contract was signed, with an additional $750,000 deposit due at closing.  The contract also included a mortgage contingency clause, pursuant to which Borrower was required to seek and obtain a $1,000,000 loan, which was to be secured by a first mortgage on the property.  If Borrower was unable to obtain such financing, then either the seller or Borrower could terminate the sales contract.  However, if Borrower succeeded in obtaining the $1,000,000 loan, then the contract also provided for the seller to take a carry-back second mortgage to secure the remaining $2,000,000 balance of the purchase price.

Borrower satisfied the mortgage contingency clause by timely obtaining approval for a $1,000,000 loan from Community Bank of Naples ("CBN").  The loan closing was scheduled for September 6, 2005.  However, one business day prior to the scheduled closing, CBN informed Borrower that CBN would not approve the seller's holding a second mortgage on the property.  Instead, CBN put Borrower in the untenable position of either arranging for a rushed alternative financing through CBN or risking the loss of the substantial $800,000 deposit Borrower had made toward the purchase price.  Not wanting to risk losing the deposit, Borrower agreed to the substitute financing through CBN.    Accordingly, Borrower applied for and received the $2,000,000 loan from CBN, which was secured by a second mortgage on the property.

2

The second mortgage loan transaction forms the basis of this lawsuit.  The terms of that loan, as presented to Borrower at closing, included the following: an adjustable rate five-year loan, with interest-only payments for the first 18 months, followed by 41 months of combined principal and interest payments, with a final balloon payment.[2]  It is undisputed that CBN did not provide any disclosures to Borrower in connection with the second mortgage loan.  In fact, CBN's own internal documents reflect that CBN processed the loan as a commercial and/or investment loan, as opposed to a personal or residential loan.  It is also undisputed that Borrower used the second mortgage loan proceeds to acquire the property, which, at all relevant times, Borrower intended to—and, in fact, did—occupy as her principal residential dwelling.  To date, Borrower still resides at the property.  In 2008, CBN merged with the Defendant, RBC (USA) Bank, N.A. ("RBC").

## Positions of the Parties

Borrower argues that RBC, as a result of its merger with CBN, has committed numerous violations of TILA and HOEPA by failing to provide any of the disclosures required by those statutes.  RBC argues that no statutory disclosures were required because the second mortgage loan was a commercial loan and, as such, is not covered by TILA or HOEPA.  RBC further argues that even if the second mortgage loan was subject to TILA or HOEPA, Borrower's claims under those statutes are nevertheless time-barred by the applicable statute of limitations.  Borrower responds that her claims are timely because (i) the statute of limitations has been equitably tolled; and (ii) the applicable statute of limitations does not apply to claims that have

---

[2] Borrower asserted at the February 7, 2012 trial that the second mortgage loan was modified on two occasions: first in 2007 and again in February, 2009.  The Court excluded from evidence any documents or testimony related to the first purported modification because such modification was not raised or referenced in Borrower's complaint.  The second "modification" occurred on February 18, 2009, as evidenced by the *Deferral Extension Agreement*, admitted into evidence as Plaintiff's Exhibit 14.  However, the only effect of the *Deferral/Extension Agreement* was to extend the maturity date of future payments by two months.  It did not alter the payment amounts or interest rate.

been presented in a defensive posture in the nature of recoupment.  Borrower has calculated her

damages in the total amount of $359,966.19, comprised as follows: $283,895.69 of finance

charges (i.e., interest payments made on the loan); $13,935.50 of settlement charges incurred at

closing; $260.00 in pre-paid finance charges; and $61,875.00 in attorney's fees ($275/hour x 225

hours).[3]  RBC did not challenge any item comprising Borrower's damages except the

reasonableness of the attorney's fees.  The Court need not address whether any or all of these

damages are actually recoverable by Borrower given that the Court finds in favor of the

Defendant in this case on all counts.

## Legal Analysis

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b), and

the standing order of reference from the district court.  This matter is a core proceeding under 28

U.S.C. § 157(b)(2)(O).  To the extent a reviewing court finds this proceeding to be a core, but

constitutionally impaired, proceeding or a non-core proceeding, the parties have consented to this

Court hearing the proceeding under 28 U.S.C. § 157(c)(2), and the Court may, therefore, enter a

final judgment resolving this matter.

I.    **Count I – HOEPA Violations: 15 U.S.C. § 1639(a)(1)-(2) and § 1639(b)(1)[4]**

**A. Borrower's Second Mortgage Loan Transaction Was Not Subject to HOEPA.**

Borrower alleges that RBC violated HOEPA by failing to provide her with the

disclosures required by § 1639(a)(1)(A)-(B) and § 1639(a)(2)(B) in connection with the second

mortgage loan transaction.  Borrower also alleges that RBC violated § 1639(b)(1) by not

providing the disclosures required by § 1639(a) to her at least three business days prior to the

consummation of the second mortgage loan transaction.  Borrower's claims, of course, assume

---

[3] Borrower herself is an attorney licensed to practice in the State of Florida and the Middle District of Florida.
[4] Unless otherwise noted, all statutory section references are to Title 15 of the United States Code.

that the second mortgage loan transaction was covered by and subject to HOEPA, § 1639. However, this assumption is not supported by the applicable facts or law, and Borrower's HOEPA claims must fail.

Section 1639 applies only to certain transactions. Specifically, that section applies to "each mortgage referred to in section 1602(aa) of this title." Section 1602(aa), in turn, sets forth the criteria for a mortgage to be deemed a high-rate mortgage, such that it would be subject to the strictures of HOEPA. However, certain types of mortgage transactions are expressly excluded from the scope of § 1602(aa). "A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan…" (emphasis supplied). 15 U.S.C. § 1602(aa)(1). By the statute's plain language, if the Borrower's mortgage transaction is a "residential mortgage transaction," then it is excluded from § 1602(aa) and is not, therefore, subject to § 1639.

A "residential mortgage transaction" is defined in § 1602(w) as "a transaction in which a mortgage…is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." It is undisputed that Borrower granted the second mortgage to CBN, now RBC, in order to finance the acquisition of her dwelling. In fact, Borrower even admitted as much numerous times in her Complaint. For example, Borrower alleged that "[CBN] knew from the date that [Borrower] entered into the contract to purchase the home…, that the financing requested was strictly to purchase the homestead property." (Doc. 1, p. 2). Borrower later alleged that "[CBN] knew that the purpose of the second mortgage was to acquire Debtor's homestead property." (Doc. 1, p. 3). Because the second mortgage was created and retained against Borrower's dwelling for the purpose of allowing Borrower to acquire that

dwelling, the mortgage transaction in question is, by definition, a "residential mortgage transaction." As such, it is not the type of mortgage referred to in § 1602(aa) and cannot, therefore, give rise to any HOEPA violations.

This Court is not alone in its interpretation of the interplay between, and application of, the various statutory sections discussed above. *See, e.g., Martin v. Citimortgage*, 2010 WL 3418320 *5, n. 7 (N.D. Ga. Aug. 3, 2010) (noting that HOEPA does not apply to transactions in which the loan is used to purchase the primary residence); *Phan v. Accredited Home Lenders Holding Co.*, 2010 WL 1268013 *4 (M.D. Fla. Mar. 29, 2010) (ruling that where a mortgage is given to purchase a primary residence, the transaction at issue is a residential mortgage transaction, and HOEPA is inapplicable); *McAnaney v. Astoria Financial Corp.*, 665 B.R. 132, 155-56 (E.D.N.Y. 2009) (holding that a purchase money mortgage cannot give rise to a HOEPA claim); *Manown v. Cal-Western Reconveyance Corp.*, 2009 WL 2406335 *5 (S.D. Cal. Aug. 4, 2009). Furthermore, the code-based implementation provisions of TILA, including HOEPA, which are known collectively as "Regulation Z," [5] also support this reading. *See* 12 C.F.R. § 226.32(a)(2)(i) (stating that the section does not apply to a residential mortgage transaction).

The Court also notes that while one could arguably read § 1639(a)(2) as not being subject to the same carve out for "residential mortgage transactions" that exists in § 1639(a)(1), due to the fact that the reference to § 1602(aa) is not expressly included in § 1639(a)(2) as it is in § 1639(a)(1), the Court rejects such a reading. Instead, the Court holds that "residential mortgage transactions" are excepted from the disclosure requirements of both § 1639(a)(1) and § 1639(a)(2). This holding finds support in the corresponding Regulation Z provision, 12 C.F.R. § 226.32.

---

[5] Regulation Z is part of the Code of Federal Regulations, and is codified at 12 C.F.R. Part 226 (12 C.F.R. § 226.1, *et seq.*). Specifically, HOEPA transactions are governed by 12 C.F.R. § 226.32.

Section 226.32(c)(2)-(4) requires the same information to be disclosed as is required by HOEPA, § 1639(a)(2)(B): to wit (i) the annual percentage rate of the loan, (ii) the amount of the regular monthly payment, and (iii) for variable rate transactions, a statement that the interest rate and monthly payment may increase, together with the maximum amount of the monthly payment. However, § 226.32 of Regulation Z is clear that "residential mortgage transactions" are not subject to any portion of that section, including the requirements of subsection (c). 12 C.F.R. § 226.32(a)(2)(i). Thus, by reading § 1639 together with its Regulation Z implementation provision (§ 226.32), it becomes clear that residential mortgage transactions are not subject to the disclosures required by § 1639(a)(2).

Consistent with this Court's reading of § 1639, other courts have also concluded that the entirety of § 1639 is inapplicable to residential mortgage transactions. *See Burkett v. Bank of America, N.A.*, 2011 WL 4565881 *4 (S.D. Miss. Sept. 29, 2011); *Norton-Griffiths v. Wells Fargo Home Mortg.*, 2011 WL 61609 *6-7 (D. Vt. Jan. 4, 2011); *Yulaeva v. Greenpoint Mortg. Funding, Inc.*, 2010 WL 5394859 *3-4 (E.D. Cal. Dec. 21, 2010) (stating that the entirety of § 1639 applies only to loans that meet the requirements of § 1602(aa)); *In re West*, 420 B.R. 284, 287 n. 4 (Bankr. W.D. Pa. 2009) (stating that the particular disclosure required by § 1639(a)(2)(B) is only required for mortgages that meet the criteria of § 1602(aa)).

In sum, the Court concludes that Borrower's second mortgage loan transaction is a "residential mortgage transaction." Accordingly, CBN, now RBC, was not required to provide Borrower with the disclosures required by either § 1639(a)(1) or § 1639(a)(2). *A fortiori*, CBN, now RBC, cannot have violated § 1639(b)(1)—for failing to provide the disclosures at least three business days prior to the consummation of the transaction—where no disclosures were required

in the first place.  Accordingly, Borrower's claims for the alleged HOEPA violations in Count I must fail.

### B.  Borrower's Claims Are Time-Barred.

Even if Borrower's second mortgage loan transaction was subject to HOEPA, and CBN had been required to provide the § 1639 disclosures to Borrower, her claims are time-barred by the applicable one-year statute of limitations contained in § 1640(e).  The loan transaction which resulted in the creation of the second mortgage in question closed on September 6, 2005. Borrower did not file suit in this adversary proceeding until April 7, 2011, over five and one-half years after the closing date, and well after the one-year statute of limitations had run.

Section 1640 of TILA governs the civil liability of any creditor who fails to comply with TILA, including HOEPA.  Under § 1640(a), individuals may bring private actions to recover the damages outlined in § 1640(a)(1)-(4).  However, § 1640(e) requires any such action to be brought "within one year from the date of the occurrence of the violation."  Section 1640(e) also provides a narrow exception to the one-year statute of limitations where an individual has asserted a violation "in an action to collect the debt which was brought more than one year from the date of occurrence of the violation as a matter of defense by recoupment or set-off in such action."  In other words, where a creditor institutes suit against the borrower to collect a debt arising from a transaction covered by TILA, and such suit was not commenced until after the one-year statute of limitations expired, the borrower can raise the alleged TILA violation in a defensive posture so as to reduce any amount of indebtedness the plaintiff-creditor may recover. As discussed below, numerous courts have addressed how and in what circumstances an alleged violation will be found to have been presented defensively.

In this case, Borrower concedes, as she must, that her claims would generally be untimely under § 1640(e) since she did not file this adversary proceeding until approximately five and one-half years after the date on which the alleged violations occurred.  Nevertheless, Borrower contends that her claims are timely because, according to Borrower, (i) RBC's filing of its proof of claim in Borrower's main bankruptcy case constitutes an "action to collect the debt" which was brought more than one year after the date of the alleged TILA violations, and Borrower has presented her claims in a defensive posture in the nature of recoupment; and (ii) the doctrine of equitable tolling applies in this case to toll the triggering of the one-year statute of limitations. The Court will address each argument in turn.

1. **Borrower Did Not Assert Claims in a Defensive Posture by way of Recoupment or Set-Off**

Borrower argues that when RBC filed its proof of claim in Borrower's main bankruptcy case,[6] such filing constituted "an action to collect the debt" within the meaning of § 1640(e), and that because the proof of claim was filed on November 24, 2010, more than one year after the date on which the alleged violations occurred, she is not barred from asserting the violations in a defensive posture by way of recoupment or set-off.  This argument implicates two distinct sub-issues.  First, the argument assumes that RBC's mere filing of its proof of claim constitutes an "action to collect the debt" within the meaning of § 1640.  The second issue is whether Borrower's claims were indeed raised defensively.

a. *Filing a Proof of Claim as an "Action to Collect the Debt"*

The Court is not convinced that the mere filing of a proof of claim constitutes an "action" to collect a debt.  The Court realizes that this is a controversial statement, given the line of cases that have found the filing of a proof of claim to be tantamount to instituting a civil action.  *See,*

---

[6] Case No. 9:10-bk-20101-BSS; Claim No. 7.

9

*e.g., In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985) (citing *Nortex Trading Corp. v. Newfield*, 311 F.2d 163 (2d Cir. 1962)); *In re Kittrell*, 2012 WL 369170 *3 (Bankr. M.D.N.C. Feb. 3, 2012). In fact, some courts have boldly asserted that filing a proof of claim cannot be construed as anything but an action to collect a debt. *See, e.g., In re Jones*, 122 B.R. 246, 250 (Bankr. W.D. Pa. 1990) ("[t]he filing of a proof of claim, by its very nature, is an action to collect a debt"); *In re Coxson*, 43 F.3d 189, 194 (5th Cir. 1995) ("filing a proof of claim is 'an action to collect the debt'"); *In re Woolaghan*, 140 B.R. 377, 384 (Bankr. W.D. Pa. 1992) ("the act of filing a proof of claim is an action to collect a debt").

For several reasons, the Court will not equate the filing of a proof of claim with an "action to the collect the debt." To begin, a proof of claim is simply that: proof of a creditor's "claim." The term "claim" is defined in the Bankruptcy Code in material part as a "right to payment." 11 U.S.C. § 101(5)(A). Thus, a proof of claim is a creditor's proof of its right to payment. *See* Fed. R. Bankr. P. 3001(a) ("[a] proof of claim is a written statement setting forth a creditor's claim."). While a proof of claim may ultimately have the practical effect of facilitating payment to a creditor, this Court is not sold on the view that the act of filing the proof of claim is the inherent equivalent of commencing or instituting an "action" (e.g., a lawsuit) to collect the debt against the debtor in bankruptcy.

Second, the proof of claim is also filed against the debtor's estate, not the debtor herself. The estate is created as a matter of bankruptcy law upon the debtor's election to file for bankruptcy. As a general matter, a proof of claim is a responsive filing lodged against the debtor's estate as a result of the debtor's decision to seek the protections of bankruptcy law. Thus, in most cases, any payment received by a creditor through the bankruptcy case on account of its proof of claim occurs as a result of the debtor's own decision to file bankruptcy. Such a

scenario is factually different from a creditor affirmatively filing an "action" (i.e., a lawsuit) against a debtor personally to obtain a judgment for the debt.[7]

Third, once a debtor has filed bankruptcy, the automatic stay prohibits creditors from engaging in conduct designed to collect the debt, and a party desirous of taking any action to collect the debt is required to seek relief from the automatic stay. 11 U.S.C. § 362. Section 362(a)(1) of the Bankruptcy Code prohibits creditors from commencing or continuing a "judicial, administrative, or other action or proceeding against the debtor" to recover a pre-petition claim against the debtor. Thus, the Bankruptcy Code already accounts for actions to collect the debt. However, this Court is unaware of any court that has ever held that filing a proof of claim is subject to the automatic stay provisions of 11 U.S.C. § 362. *See In re I.C.H. Corp.*, 219 B.R. 176, 190 (Bankr. N.D. Tex. 1998), *rev'd on other grounds*, 230 B.R. 88 (N.D. Tex. 1999) ("The automatic stay is not applicable to assertion of a claim in a proof of claim in a Bankruptcy Court"); *see also In re Nelson*, 234 B.R. 528, 534 (Bankr. M.D. Fla. 1999) (Paskay, J.) (noting the absurdity of the contention that a creditor who has filed a proof of claim has violated the automatic stay); *In re McMillen*, 2010 WL 2025610 *2 (Bankr. N.D. Ga. Feb. 25, 2010) (noting that filing a proof of claim, by itself, is not debt collection activity). If filing a proof of claim were to be deemed an "action to the collect the debt," then such a filing would be subject to 11 U.S.C. § 362. Because creditors do not need to obtain stay relief to file proofs of claim, it follows that the filing of a poof of claim is not an action to collect the debt.

Moreover, an absolute rule that filing of a proof of claim constitutes an "action" to collect a debt within the meaning of § 1640(e) could provide debtors with an end-run around the statute of limitations. For example, 11 U.S.C. § 501 allows parties other than the creditor itself to file a

---

[7] To the extent that a creditor's proof of claim is based on a pre-petition judgment already obtained against the debtor outside of the bankruptcy forum, presumably the debtor could have raised any existing TILA claims against the plaintiff in the non-bankruptcy proceeding in an effort to offset the amount of damages sought by the plaintiff.

proof of claim. Section 501(c) of the Bankruptcy Code permits a debtor to file a proof of claim on a creditor's behalf. Thus, in cases where a creditor does not file a proof of claim, the debtor could file one for the creditor, and then proceed to institute an adversary proceeding alleging claims for TILA violations that would otherwise be barred by the statute of limitations.

That is precisely what occurred in *In re Jones*. *See* 122 B.R. at 250 (noting that the debtor filed a proof of claim for the creditor). The debtor then filed an adversary proceeding against the creditor, based on the "creditor's" proof of claim (filed by the debtor), and proceeded to bring otherwise time-barred TILA claims as part of its objection to the "creditor's" claim. *Id.* Incredibly, the court did not find this sequence of events to be troubling. Instead, the court held that the TILA claim was brought as a defense to the creditor's proof of claim and was therefore not barred by § 1640. *Id.* While RBC filed its own proof of claim in this case, the Court is concerned by the prospect of adopting a bright-line rule that filing a proof of claim constitutes an "action" to collect a debt against a debtor, particularly where such filing can serve as an obvious end-run around the statute of limitations. *See Highsmith v. Chrysler Credit Corp.*, 150 B.R. 997, 1002 (N.D. Ill. 1993) (refusing to characterize the debtor's claims as defensive where it was the debtors—not the creditor—who initiated the five count action and filed their proof of claim for the creditor), *aff'd in part* and *rev'd in part on other grounds*, 18 F.3d 434 (7th Cir. 1994).

A similar concern involves the debtor's ability simply to not pay its debt, file for bankruptcy, and wait for the creditor to file its proof of claim. Many creditors who themselves would not initiate an "action to collect the debt" outside of the bankruptcy forum may file proofs of claim in their debtors' bankruptcy cases simply as a response to the debtors' bankruptcy filing, in order to preserve their prospect of being paid through the bankruptcy case. This Court sees a difference between preserving a right to payment upon the debtor's initiation of a bankruptcy

case and affirmatively commencing an action, such as a state court foreclosure or debt collection lawsuit, to collect the debt. *See, e.g., Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269, 288 n. 25 (S.D.N.Y. 2011) (referencing an "action" for purposes of § 1640 as a foreclosure action). To hold that filing a proof of claim is the equivalent of instituting an "action to collect the debt" would allow debtors to file bankruptcy, wait for the creditor to file a proof of claim, and then revive stale TILA causes of action, thereby defeating the very purpose of the statute of limitations. *In re Audino*, 10 B.R. 135, 137 (Bankr. D. R.I. 1981); *c.f. Moor v. Travelers Ins. Co.*, 784 F.2d 632 (5th Cir. 1986) ("When the debtor hales the creditor into court…the claim by the debtor is affirmative rather than defensive.").[8] The Court will not allow savvy debtors to manipulate the bankruptcy system in such a manner.

Finally, the Court is reluctant to adopt an unequivocal rule of law that filing a proof of claim constitutes an "action" to collect a debt within the meaning of § 1640(e) when a creditor is required to file a proof of claim, as RBC was in this case. Section 1640's use of the term "action" suggests that the "action" should be voluntary. *See* § 1640(e) (referring to the "action" as being "brought" by a creditor). However, the Federal Rules of Bankruptcy Procedure mandate that creditors file proofs of claim in certain instances. For example, Rule 3003(c), which applies in all chapter 11 cases, such as the Borrower's main bankruptcy case, states that "[a]ny creditor…whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim. . . ." (emphasis supplied). Additionally, in chapter 13 bankruptcy cases, even secured creditors must file a proof of claim if they are to be repaid under the debtor's chapter 13 plan. *In re Munger*, 2011 WL 2161429 *2 (Bankr. N.D. Tex. June 2, 2011).

---

[8] While *Moor* did not involve a bankruptcy filing, the Court believes that the same rationale could apply to debtors who do file for bankruptcy, thereby haling creditors into the bankruptcy forum and prompting the filing of proofs of claims.

Here, Borrower filed for bankruptcy under chapter 13 of the Bankruptcy Code on August 23, 2010.  Borrower scheduled RBC as a secured creditor holding a contingent claim.  *See* Case No. 9:10-bk-20101 (Doc. 1, Sch. D).  In order to be included in Borrower's plan, RBC filed its proof of claim on November 24, 2010.  Then, on December 9, 2010, Borrower converted her bankruptcy case from chapter 13 to chapter 11.  Borrower also amended her Schedule D on December 16, 2010.  In her amended schedules, she characterized RBC as a creditor holding a disputed claim.  *See* Case No. 9:10-bk-20101 (Doc. 49).  Thus, if RBC had not already filed its proof of claim in response to the initial schedules, it would have been required to do so under Bankruptcy Rule 3003(c)(2) after the amended Schedule D was filed.  In short, RBC was procedurally required to file a proof of claim, and its fulfillment of that requirement can hardly be said to be voluntary.    Such a requirement is inconsistent with the meaning of the term "action" as used in § 1640(e).

Based on the foregoing concerns, the Court declines to hold that the mere filing of a proof of claim constitutes an "action to collect the debt" within the meaning of § 1640.  Accordingly, the narrow exception to the statute of limitations contained in § 1640(e) would not apply in this case.  Furthermore, as discussed below, the Court also concludes that Borrower did not assert her TILA claims in a defensive posture by way of recoupment or setoff.

b.  *Requirement that Claims be Asserted Defensively*

The Eleventh Circuit Court of Appeals has established a test for determining whether a borrower's TILA claim has been asserted defensively in the nature of recoupment or setoff.  *See In re Smith*, 737 F.2d 1549, 1553 (11th Cir. 1984).  In *Smith*, the court ruled that in order for a debtor to maintain a claim for monetary damages that would otherwise be precluded by the statute of limitations, the debtor must show that (i) the TILA violation and the creditor's debt

arose from the same transaction; (ii) the claim is asserted as a defense; and (iii) the "main action" is timely. *Id.* The court ultimately held that the debtor's asserted TILA violations were not asserted defensively because the debtor sought statutory damages, but did not contend that she had suffered any actual damages as a result of the creditor's non-disclosures. Relying on the Seventh Circuit Court of Appeals' decision in *Basham v. Finance America Corp.*, 583 F.2d 918, 928 (7th Cir. 1978), the *Smith* court ruled that where a debtor seeks only statutory damages, the TILA claim is not directed at, or an answer to, the underlying debt, but rather is an action for affirmative relief. *Smith*, 737 F.2d at 1554. *See also Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 188 (S.D. Tex. 2007) (holding that the recoupment exception contained in § 1640(e) does not apply where a debtor can prove only statutory damages).

Other courts have held that when a debtor fails to object to the creditor's proof of claim, and instead simply initiates an adversary proceeding without mentioning the proof of claim, or requesting that the proof of claim be reduced, the debtor's claims are affirmative in nature. For example, in *In re West*, 420 B.R. 284, 290 (Bankr. W.D. Pa. 2009), the court held that where the debtor's claims in the adversary proceeding did not assert an objection to the creditor's proof of claim, the claims for damages were not presented in the nature of a defense. *See also In re Sallings*, 357 B.R. 646, 650 (Bankr. N.D. Ala. 2007) (holding that the debtor's claim was not directed at, or an answer to, the underlying claim because the debtor had not asserted her claim defensively, or as a counterclaim, or as an objection to the creditor's proof of claim). Indeed, many of the cases which have permitted a debtor to assert an otherwise untimely TILA claim in the nature of recoupment or set-off have done so on the express basis that the debtor actually objected to the creditor's proof of claim. *See, e.g., In re Salazar*, 2011 WL 1237648 *5 (Bankr. D. Md. Mar. 30, 2011) (allowing debtor to assert TILA claims in defense by recoupment <u>in their</u>

objection to the creditor's proof of claim). Absent such an express objection, the defensive requirement is not met.

Similarly, other courts have held that TILA claims are not presented defensively when the debtor-plaintiff demands relief that is inconsistent with a mere reduction in the creditor's claim. For example, in *In re Jones*, 2008 WL 4830538 *9 (Bankr. N.D. Ala. Nov. 4, 2008), the court noted that the debtor-plaintiff's adversary complaint included a demand for a monetary judgment for damages. The court found such a demand to be inconsistent with a defense of recoupment. Further, the court highlighted that the debtor had not sought a reduction in the creditor's claim. Based on those two factors, the court concluded that the debtor's TILA claims were not asserted defensively, but rather sought affirmative relief. A similar result was reached in *Quenzer v. Advanta Mortg. Corp. USA*, 288 B.R. 884, 890 (D. Kan. 2003). In *Quenzer*, the district court noted that the debtor appeared to be seeking affirmative relief by bringing a claim for rescission of the loan transaction and seeking a declaration that the creditor's lien was void. Rescission, of course, has the effect of undoing the entire loan transaction, as opposed to simply reducing an otherwise valid debt.

As discussed in the introductory paragraph to section II, *infra*, it appears that Borrower has brought a claim in this adversary proceeding for rescission and/or breach of fiduciary duty. Borrower also seeks rescission of RBC's Federal Reserve charter and a permanent injunction against RBC. Borrower's demand for such relief is inconsistent with the defense of recoupment or setoff.

Finally, the Court acknowledges the decision reached in *In re Graves*, 2007 WL 824059 *5-6 (Bankr. N.D. Ala. Mar. 14, 2007), in which the court held that in a case where the debtor has "thrown down the gauntlet" by scheduling a creditor's claim as contingent or disputed, the

debtor cannot then rely on a subsequent proof of claim filed by that creditor to revive stale TILA claims. "[T]he Court finds the Debtors initiated the original action when they described [creditor]'s claim as contingent, unliquidated and disputed in their Schedule D. Describing [creditor]'s claim in this fashion must be considered a material, adversarial event that places the Debtors in the position of plaintiffs who initiated the main and original action." *Id.* at *5. As noted above, scheduling a creditor's claim as disputed or contingent also forces the creditor to file a proof of claim. To allow a debtor to initially contest a creditor's claim, force the filing of a proof of claim, and then assert an otherwise untimely TILA claim does not serve the ends of justice or fulfill the purpose of the statute of limitations.

      *c.  Borrower's Claims in this Adversary Proceeding*

Here, all four of the problems discussed in the preceding section are present. Specifically, Borrower (i) has not alleged, and did not include in her damages calculation as stated on the record at trial, a quantifiable amount of actual damages; (ii) did not object to RBC's proof of claim or seek a reduction of RBC's claim in her adversary complaint; (iii) seeks relief which is inconsistent with a defensive manner of pleading; and (iv) took the initial step of then scheduling RBC as a creditor and holder of a contingent and disputed claim.

      (i)    <u>No Actual Damages</u>

Borrower acknowledges that in order to recover actual damages under § 1640(a)(1), she must prove detrimental reliance on the lender's failure to provide the required disclosures. (Doc. 29, p. 4). *See Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001). For purposes of § 1640(a)(1), the term "actual damages" does not mean simply those payments that were actually made by a consumer pursuant to a loan transaction subject to TILA. Rather, a consumer's actual damages in the TILA context consist of the difference between what the consumer paid the

lender who failed to provide the required disclosures versus what the consumer could have otherwise paid had the consumer shopped around for other loans in the competitive marketplace and found a lender willing to make the loan on more favorable terms with a lesser amount of finance charges.  Simply put, an award of actual damages must be based on a showing that the consumer, upon properly disclosed information, would have engaged in a different, less expensive transaction.

Here, Borrower did not prove an amount of actual damages.  While Borrower initially had financing in place from the seller for the second mortgage, it is unclear to the Court, and Borrower did not demonstrate, that the terms of that financing agreement were any more favorable than the terms presented by CBN.  No evidence was provided to the Court that the initial financing arrangement would have resulted in a lesser amount of finance charges being paid than what was to be owed to CBN.  Nor did Borrower introduce any evidence that she could have secured any other loans on better terms than the one she consummated with CBN.  Thus, Borrower has not demonstrated the necessary element of detrimental reliance to prevail on a claim for actual damages.

Moreover, and perhaps more to the heart of the matter, it was not CBN's failure to provide TILA disclosures to Borrower that led to her to forgo a search for other, more favorable loans.  Rather, it was the risk of losing her deposit, and the timing exigencies surrounding the closing date, that led her to accept the second mortgage loan from CBN.

Furthermore, it is does not appear to the Court that Borrower even included an actual damages component in her damages calculation.  At trial, the Court instructed Borrower to provide a breakdown of her damages to the Court.  Borrower's damages calculation, presented to the Court, consisted of $283,895.69 of finance charges (i.e., interest payments made on the loan);

$13,935.50 of settlement charges incurred at closing; $260.00 in pre-paid finance charges; and $61,875.00 in attorney's fees – for a total of $359,966.19. However, as noted above, just because such amounts were paid does not mean that those amounts constitute "actual damages" under § 1640(a)(1). In fact, § 1640(a)(2)(A)(i) allows individuals to recover "twice the amount of any finance charge in connection with the transaction." Similarly, § 1640(a)(4) provides for the recovery, in the event of a HOEPA violation, of an amount "equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material."

Here, with the exception of the claimed attorney's fees, Borrower's damages consist of finance charges paid to CBN/RBC. Those finance charges are covered as part of the statutory damages available to Borrower under § 1640(a)(2) and (4). To find otherwise (i.e., that Borrower's damages are "actual damages") would render those provisions meaningless as mere surplusage. Accordingly, the Court concludes that Borrower has included only statutory damages as a part of her damages calculation, and does not seek to recover any actual damages. Thus, under the Eleventh Circuit's *Smith* decision, Borrower has not asserted her TILA claims defensively.

(ii)    <u>No Objection to Proof of Claim; Demand for Inconsistent Relief; and Scheduling RBC as the Holder of a Disputed, Contingent Claim</u>

In addition to seeking only statutory damages, Borrower did not object to RBC's proof of claim, and her complaint does not reference the proof of claim or seek a reduction in the amount of the proof of claim. Borrower also makes a demand for a monetary judgment in her favor, to be entered against RBC, as well as for other forms of affirmative relief, such as for rescission of the second mortgage loan transaction and an injunction against RBC. As noted by the *Jones* and *Quenzer* courts, Borrower's requested relief is inconsistent with a defensive pleading. Finally,

Borrower scheduled RBC as the holder of a contingent, disputed claim.  Not only did that characterization cause RBC to file its proof of claim under Rule 3003, but it also constituted the initial action under *Graves*.  Accordingly, Borrower will not now be heard in "response" to RBC's claim when it was her own bankruptcy filing and characterization of RBC's claim that opened the door for Borrower to assert her otherwise time-barred TILA/HOEPA claims.

In sum, the Court holds that Borrower did not assert her claims defensively.  Thus, unless the one-year statute of limitations in § 1640(e) was equitably tolled, her claims are time-barred.

## 2.  Equitable Tolling Does Not Apply in this Case

The Eleventh Circuit Court of Appeals has expressly held that the one-year statute of limitations contained in § 1640(e) is subject to equitable tolling.  *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 708 (11th Cir. 1998).  As noted in *Ellis*, equitable tolling allows plaintiffs to sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances.  *Id.* at 706.  In the TILA context, the doctrine usually applies to consumers who have been the victim of a lender's fraudulent concealment of its misdeed, such that the borrower/potential plaintiff is kept in the dark about the existence of the potential cause of action.

In this case, Borrower did not assert in her Complaint that the doctrine of equitable tolling applies.  Borrower did, however, advance the equitable tolling theory in her Proposed Findings of Fact and Conclusions of Law (Doc. 29), which the Court requested each party to submit.  Borrower also maintained the applicability of the equitable tolling doctrine at trial.  The Court also notes that Borrower averred in the Complaint that CBN, now RBC, "fraudulently misrepresented" the purpose of the loan on its own intra-company loan documents as an investment loan when, in fact, the bank knew that the loan was sought for the purpose of

20

acquiring a residence.  Doc. 1, p. 3.  Nowhere else in the Complaint did Borrower use the term "fraud" or "misrepresentation," or otherwise indicate the existence of generally inequitable conduct.

The Court rejects Borrower's equitable tolling argument because it is not persuaded that CBN engaged in any inequitable conduct that could allow the Court to apply the equitable tolling doctrine.  Even Borrower's allegation states that the misrepresentation as to the purpose and nature of the loan was made on the bank's _own_ "intra-company" documents.  Doc. 1, p. 3.  It is unclear what possible effect this could have had on the Borrower's knowledge as to whether she did or did not receive the disclosures which she now asserts were required.  Furthermore, when pressed at trial to explain what actions of the bank gave rise to equitable tolling, the Borrower reiterated her theory that CBN intentionally marked the loan as "investment" or "commercial" when, in fact, it knew that the loan was actually residential in nature.  Borrower also argued that this purported fraudulent conduct was concealed from her until she received CBN's loan documents pursuant to a subpoena that Borrower served on CBN.  In other words, Borrower argues that she did not know that she did not receive the disclosures until she obtained documents in response to her subpoena.

Presumably, the motivating factor behind CBN's characterization of Borrower's second mortgage loan as non-residential would be to avoid TILA's disclosure requirements.  Again, though, even accepting as true Borrower's assertion that the bank intentionally misrepresented the nature of the loan to avoid the TILA and HOEPA disclosure requirements, it does not follow that such actions concealed the relevant information—that is, that no disclosures were provided—from Borrower.  Here, the alleged violations revolve around the bank's failure to provide disclosures that Borrower contends were required by the statute.  What, then, was

concealed from Borrower?  The only possible answer that would give rise to equitable tolling

would be that CBN somehow concealed from the Borrower that it was not providing disclosures

to the Borrower.  Such an argument, of course, defies logic, as it would have been obvious to

Borrower from the face of the loan documents presented to her that no disclosures were included.

Borrower's subsequent subpoena served on CBN had nothing to do with the lack of disclosures

as of the loan closing.  For that reason, the Eleventh Circuit has previously rejected the same

argument Borrower made in this case.  *See Frazile v. EMC Mortg. Corp.*, 382 Fed. Appx. 833,

838 n. 2 (11th Cir. 2010).  The Court also finds Borrower's argument unpersuasive in light of the

fact that Borrower herself is a licensed attorney who, according to her trial testimony, is an

experienced broker in real estate closings and familiar with the types of disclosures that would

normally be required by TILA.

      If the Borrower's second mortgage loan transaction were subject to TILA and HOEPA,

as she alleged, then the alleged violations for not providing the required disclosures existed

whether the bank intentionally, or inadvertently, failed to provide the disclosures.  Regardless of

how the loan was characterized by the bank, the undisputed fact remains that Borrower knew on

the closing date that she did not receive any disclosures.  But, Borrower's causes of action are

based only on the bank's failure to provide disclosures.  The bank's motivations and conduct in

not providing such disclosures are simply irrelevant to whether or not such disclosures were

actually provided.  *See Frazile*, 382 Fed. Appx. At 838, n. 2 (stating that the borrower's "ability

to bring suit within one year of this alleged TILA violation was not affected by the defendants'

failure to provide the required documents at closing"); *see also Sampson v. Washington Mut.*

*Bank*, 2011 WL 4584780 *2 (11th Cir. Oct. 5, 2011) (finding equitable tolling inapplicable

where debtor alleged no facts other than non-disclosure because "nondisclosure happens every

time there is a TILA nondisclosure violation, and mere violation of the statute cannot serve as extraordinary circumstances that merit tolling"). That the bank characterized the loan as non-residential does not alter the Borrower's requirement to commence suit within one year if she thought that disclosures were in fact required. *See Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633-34 (5th Cir. 1986) (holding that it was impossible for debtor to allege fraudulent concealment because the causative fact giving rise to the cause of action was the non-disclosure at the time the loan closed, and debtor knew or should have known of such non-disclosure as of that date). Therefore, the Court finds that no facts exist to support a fraudulent concealment theory, or any other basis that would give rise to the equitable tolling doctrine.

In sum, Borrower failed to commence suit against CBN, now RBC, within one year from the date on which the alleged violations occurred (i.e., one year from the date on which the allegedly required disclosures were not provided to Borrower). And as explained above, the Court does not find the limited exception in § 1640(e) to apply in this case. Moreover, Borrower's argument in favor of equitable tolling is a non-starter because the Borrower's own knowledge that she did not receive any disclosures from the bank could not have been concealed from her, and no other basis exists on which the Court could rely to apply the doctrine of equitable tolling. Accordingly, to the extent that Borrower possessed any viable HOEPA claims (which, as explained in section I.A, *supra*, she did not), such claims are time-barred under § 1640(e). *See Girgis v. Countrywide Home Loans, Inc.*, 733 F.Supp.2d 835, 845 (N.D. Ohio 2010) (noting that HOEPA claims are subject to the same general TILA statute of limitations in § 1640(e)); *Kamara v. Michael Funding, LLC*, 379 F.Supp.2d 631, 634 n. 1 (D. Del. 2005) (dismissing numerous TILA and corresponding implementation/Regulation Z claims for failure to file suit within one year).

**II.**    **Count II – Violations of TILA Disclosure Requirements Pertaining to Adjustable Rate Mortgage Loans: 12 C.F.R. §§ 226.19(b), 226.20(c), and 226.23**

In Count II of her complaint, unlike Counts I, III, IV, and V, Borrower does not cite any specific statutory provisions that CBN, now RBC, allegedly violated.  Instead, Borrower recites a legal conclusion that where an annual percentage rate on a loan secured by the consumer's principal dwelling may increase after closing, and the term of the loan exceeds one year, then TILA requires additional adjustable rate mortgage disclosures to be provided, including (i) a consumer handbook; (ii) a loan program disclosure; and (iii) subsequent disclosures of the change in the interest rate each time such change occurs.  (Doc. 1, ¶ 9).  Borrower also references a right to rescind the transaction.  (Doc. 1, ¶ 10).[9]  To confuse matters, Borrower also asserts the legal conclusion that RBC breached its fiduciary duty to Borrower by failing to provide any disclosures or documentation related to the adjustable rate second mortgage loan and the purported right of rescission.

It is unclear from the Complaint whether Borrower meant to allege specific TILA violations in Count II, including for rescission, or whether she was attempting to plead only a breach of fiduciary duty claim.  Notwithstanding the lack of clarity in the Complaint, based on Borrower's Proposed Findings of Fact and Conclusions of Law (Doc. 29, p. 8), the Court assumes that Borrower intended to plead both specific TILA violations, including a claim for rescission, as well as a breach of fiduciary duty claim.  Accordingly, the Court will address each potential violation in turn.

---

[9] Borrower's text in paragraphs 9 and 10 appears to have been copied and pasted from one of several websites containing information on Regulation Z.  For example, the following two websites contain the verbatim language used by Borrower in her Complaint. www.loanbiz.com/regz.htm and www.austinhomeloan.com/regulations/regz.html .

### A.  Breach of Fiduciary Duty

Borrower did not plead any facts to support the existence of a fiduciary duty owed by CBN

to Borrower.    Such a claim is also legally deficient under well settled law that borrowers and

lenders do not, absent special circumstances (which have not been alleged here), share a

fiduciary relationship with one another.  *See McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1226

n. 13 (11th Cir. 2002) ("As a general matter, there is no presumed fiduciary relationship between

a lender and a borrower under the common law.") (citing and applying Florida law); *Carpenter*

*v. Community Bank of Homestead*, 710 So. 2d 65, 66 (Fla. 3d DCA 1998) ("Generally, the

relationship between a bank and its borrower is that of creditor to debtor, in which parties engage

in arms-length transactions, and the bank owes no fiduciary responsibilities.") (internal citation

omitted).  Accordingly, to the extent Borrower was proceeding under a breach of fiduciary duty

theory, such claims must fail.

### B.  Violations of Regulation Z: §§ 226.19(b)(1), 226.19(b)(2), and 226.20(c)

Borrower also referenced three specific disclosures that she believes CBN was required to

provide to her in light of the fact that the second mortgage loan was secured by Borrower's

principal dwelling, had a term greater than one year, and contained an annual percentage rate that

was subject to being increased after closing.  Although not specifically cited in the Complaint,

the Court has located the corresponding Regulation Z provisions on which Borrower relies.

The first alleged violation is based on CBN's failure to provide Borrower with the booklet

entitled *Consumer Handbook on Adjustable Rate Mortgages*, or a "suitable substitute."  12

C.F.R. § 226.19(b)(1).  It is undisputed that CBN failed to provide the booklet to Borrower, and

that such failure constitutes a technical violation of TILA.  *See Demarest v. Quick Loan Funding,*

*Inc.*, 2009 WL 940377 *5 (C.D. Cal. Apr. 6, 2009) (noting that the failure to provide the

handbook is a violation of TILA, but not a "material" disclosure for purposes of extending the rescission period).  However, as noted in section I.B.1, *supra*, Borrower has not asserted her claims defensively in the nature of recoupment or setoff in an action to collect the debt filed by RBC.  Therefore, to the extent that Borrower has even properly alleged a Regulation Z claim under § 226.19(b)(1), such claim is time barred by § 1640(e) and cannot succeed.

The same is true for Borrower's apparent claim under Regulation Z, § 226.19(b)(2).  Section 226.19(b)(2) of Regulation Z requires lenders of certain variable rate transactions to provide a loan program disclosure for each variable-rate program in which the consumer expresses an interest, including disclosures related to—among other things—the fact that the interest rate, payment, or term of the loan can change.  *See, e.g.,* 12 C.F.R. § 226.19(b)(2)(i).  While CBN did not make any such loan program disclosures, Borrower did not assert any such violations until after the one year statute of limitations had run.  Thus, to the extent that Borrower has even alleged a Regulation Z claim under § 226.19(b)(2), such claim is time barred by § 1640(e) and cannot succeed.

Likewise, Borrower's third potential violation of Regulation Z in Count II—to the extent Borrower even intended to allege such a violation—is also time-barred.  Borrower states that "TILA requires servicers to provide subsequent disclosure to consumers on variable rate transactions in each month an interest rate adjustment takes place."  (Doc. 1, ¶ 9(c)).  Section 226.20(c) of Regulation Z does indeed require certain disclosures to be made to consumers within a specified time period following an adjustment to the interest rate in a variable rate transaction.

Here, however, Borrower did not present any evidence that the interest rate on her second mortgage loan had been adjusted within the one year period prior to the date she initiated the

instant adversary proceeding against RBC.  In fact, the exhibit offered into evidence bearing the

most recent date with respect to a purported modification of the second mortgage loan was a

*Deferral/Extension Agreement* dated February 18, 2009.  However, as noted in footnote 2, *supra*,

that document merely extended the maturity date of future payments; it did not result in a change

to the interest rate.

Accordingly, Borrower has failed to carry her burden of demonstrating that an interest rate

adjustment was implemented without the accompanying disclosures under § 226.20(c) within

one year of her lawsuit.  *See Gengo v. Target Nat. Bank*, 513 F.Supp.2d 842, 847 (S.D. Tex.

2007) (noting that while TILA requires lenders to issue new disclosures within a specified

amount of time when an interest rate adjustment occurs, the applicable statute of limitations for

issues that fall under TILA is one year) (citing *FDIC v. Enventure V.*, 77 F.3d 123, 125 (5th Cir.

1996)).

### C.  Right of Rescission: TILA, § 1635 and Regulation Z, 12 C.F.R. § 226.23

Borrower's final claim in Count II appears to relate her purported right to rescind the second

mortgage loan transaction.  Section 1635 of TILA and section 226.23 of Regulation Z govern a

consumer's right of rescission.  Section 1635(a) of TILA provides the general right of rescission

in "any consumer credit transaction…in which a security interest…is or will be retained or

acquired in any property which is used as the principal dwelling of the person to whom credit is

extended."  *See also* 12 C.F.R. § 226.23(a)(1).  The right of rescission lasts "until midnight of the

third business day following the consummation of the transaction."  15 U.S.C. § 1635(a); *see*

*also* 12 C.F.R. § 226.23(a)(3).  The right of rescission can be extended for three years, though, if

the forms and disclosures that are otherwise required under § 1635 are not furnished to the

borrower.  *See* 15 U.S.C. § 1635(f); *see also* 12 C.F.R. § 226.23(a)(3).

However, certain transactions are exempted entirely from the scope of § 1635.  Included in
the exempt transactions are "residential mortgage transactions" as defined in § 1602(w).  *See* 15
U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1).  As explained in section I.A, *supra*, Borrower's
second mortgage loan transaction is a "residential mortgage transaction."  Thus, she has no right
of rescission.  *See Frazile v. EMC Mortg. Corp.*, 382 Fed. Appx. 833, 837-38 (11th Cir. 2010)
(noting that notice of the right to rescind is not required in "residential mortgage transactions");
*Washington v. National City Mortg. Co.*, 2011 WL 1842836 *6 (N.D. Cal. May 16, 2011)
(holding that loan transaction was a "residential mortgage transaction" and thus not subject to
rescission).

Furthermore, even if Borrower did have a right of rescission, it is clear that the time period in
which she could have exercised such a right has long expired.  *See* 15 U.S.C. § 1635(f); *see also*
12 C.F.R. § 226.23(a)(3) (where required notice or disclosures are not delivered, "the right to
rescind shall expire 3 years after consummation").  The United States Supreme Court has held
that TILA "permits no federal right to rescind, defensively or otherwise, after the 3-year period
of § 1635(f) has run."  *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 419, 118 S. Ct. 1408, 1413
(1998).  Because § 1635(f) speaks not in terms of a limitations period within which to file suit,
but rather in terms of the substantive right's duration, the right of rescission—including the
extended three-year period where disclosures are not provided—is not subject to equitable tolling
because the statute itself extinguishes the right of rescission at the end of the three-year period.
*See Washington v. National City Mortg. Co.*, 2011 WL 1842836 *6 (N.D. Cal. May 16, 2011);
*Hawkins v. First Horizon Home Loans*, 2010 WL 4823808 *4 (E.D. Cal. Nov. 22, 2010);
*Drahuse v. Federal Home Loan Mortg. Corp.*, 2011 WL 5184239 *3 (E.D. Mich. Nov. 1, 2011).

It follows that any claim asserted by Borrower based on RBC's failure to provide the rescission-related notices described in § 226.23(b)(1) must also fail, because if no right of rescission exists, then no disclosures or information related to a non-existent right would be necessary. *See Melancon v. Countrywide Bank*, 2011 WL 692051 *4-5 (E.D. La. Feb. 18, 2011) (no right to rescission-related notices when no right of rescission exists in the first place because the transaction in question was a "residential mortgage transaction").

Finally, for the sake of being thorough, the Court will address Borrower's argument that her claim for rescission is not time-barred (notwithstanding the Court's ruling above that the right of rescission is not applicable to Borrower's second mortgage loan transaction). Borrower attempts to characterize the February 2009 *Deferral/Extension Agreement* as a new transaction, for which a new set of TILA disclosures was required. Therefore, according to Borrower, because no such disclosures were provided in connection with the new transaction in 2009, she was still within the three-year rescission period for the loan at the time she filed this adversary proceeding. (Doc. 29, p. 7). In support of this argument, Borrower cites *Brown v. Marquette Sav. & Loan Ass'n*, 686 F.2d 608 (7th Cir. 1982), in which the court held that an increase in the interest rate constituted a new transaction, which required new disclosures to be provided. Because no such disclosures were provided, the court found it appropriate to assess statutory damages against the defendant. *Id.* at 614.

The *Brown* decision does not support Borrower's rescission claim for several reasons. First, as mentioned above, the 2009 *Deferral/Extension Agreement* did not alter the interest rate. It simply extended the due date for certain payments. Thus, the holding in *Brown* is inapplicable to this case. Furthermore, even if an interest rate adjustment did occur in 2009, *Brown* did not address a consumer's right of rescission. Instead, the *Brown* court allowed only for the

assessment of a statutory penalty.  This Court does not read either *Brown* or the relevant TILA statutes/provisions of Regulation Z to provide for a new window and opportunity for rescission where a subsequent adjustment to the interest rate is implemented.  Rather, Regulation Z, § 226.20(c) simply requires five specific disclosures to be delivered to the borrower.  It does not, however, start anew the three-year window within which to file a rescission claim.

In fact, Borrower's argument on this point has been squarely rejected by the Fourth Circuit Court of Appeals in *Arnold v. Waterfield Mortg. Co., Inc.*, 116 F.3d 472 (4th Cir. 1997). "[Borrower's] principal contention on appeal is that the three-year limitations period starts anew each time a rate adjustment is made to a variable rate mortgage. We disagree. A rate adjustment is not a 'transaction' within the meaning of § 1635(f)." *Id.*  Thus, while a subsequent interest rate adjustment—even if one had occurred in 2009—would have required new disclosures, the adjustment would not have triggered a new opportunity for Borrower to rescind the loan.

### III.    Count III – Violation of TILA Lending Practices: 15 U.S.C. § 1639(h) and 12 C.F.R. § 226.32(e)(1)

In Count III of her complaint, Borrower alleges that CBN, now RBC, engaged in a pattern or practice of extending credit to consumers based on the consumers' collateral without regard to their repayment ability, in violation of § 1639(h).  However, § 1639(h) only prohibits such a practice with respect to mortgages referred to in § 1602(aa).  As explained in section I.A, *supra*, Borrower's second mortgage loan transaction is excluded from the scope of § 1602(aa) because it was a "residential mortgage transaction" as defined in § 1602(w).  Therefore, the prohibition contained in § 1639(h) is inapplicable to Borrower's loan, and no violation of that section can lie. Additionally, any claim for an alleged violation of § 1639(h) would be subject to the one year statute of limitations contained in § 1640(e).  As discussed previously, Borrower's claim is time barred.

Additionally, the Court notes that in order to prevail on a § 1639(h) claim, a plaintiff is required to offer proof of a "pattern" or "practice" of the proscribed conduct.  Here, Borrower offered no evidence, such as other loans that CBN had made to other consumers, from which the Court could conclude that CBN was engaged in any such pattern or practice.  Even if CBN did extend credit to Borrower based only on the collateral offered, and not on her ability to repay the loan, a single incident cannot support a claim under § 1639(h).  Therefore, Borrower's claim in Count III also fails on this basis.

**IV.    Count IV – Violations of TILA Disclosures: §§ 1631(a), 1638(a)(1)-(6), (9)-(11), and § 1638(b)(1) and Corresponding Regulation Z Implementation Provisions**

In Count IV, Borrower alleges a number of statutory violations pertaining to CBN's failure to provide certain disclosures required by § 1638 of TILA.  Pursuant to §§ 1631(a) and 1638(b), such disclosures are required to be provided in writing before the consummation of the loan transaction.  Section 1638 applies to consumer credit transactions other than under an open end credit plan. Unlike HOEPA (§ 1639), § 1638 does not contain an exemption for "residential mortgage transactions." Thus, on its face, § 1638 applies to Borrower's second mortgage loan transaction.

The disclosures required by § 1638 are listed in § 1638(a)(1)-(15).  Borrower alleges that certain of these disclosures were either not made or inaccurately made.  Specifically, Borrower alleges violations of § 1638(a)(1)-(6) and § 1638(a)(9)-(11), together with the respective corresponding implementation provisions of 12 C.F.R. § 226.18.  Without detailing each of the nine alleged violations of § 1638(a), it is sufficient to note that, as alleged TILA violations, the one-year statute of limitations in § 1640(e) still applies.  Thus, for the reasons set forth in section I.B, *supra*, Borrower's § 1638(a) claims are time-barred.  *See Heagerty v. Home Sav. of America, F.A.*, 968 F.2d 1220 (9th Cir. 1992) (applying limitations period to § 1638(a) claims); *Pitre v.*

31

*U.S. Bank, N.A.*, 2011 WL 5449767 *3 (S.D. Tex. Nov. 9, 2011) (same); *Cauley v. OakFirst Loan Center, LLC*, 2010 WL 65003 *2 (D. Md. Jan. 4, 2010) (applying § 1640(e) to bar untimely § 1638(a)-(b) claims).

**V.     Count V – Violation of Record Keeping Requirements: Regulation Z § 226.25(a)**

In her final count, Borrower alleges a single claim for CBN's alleged violation of the record keeping requirements contained in Regulation Z, 12 C.F.R. § 226.25(a).  That section requires a creditor to "retain evidence of compliance with [Regulation Z]. . .for 2 years after the date disclosures are required to be made or action is required to be taken."  Borrower alleges that the CBN, now RBC, has failed to retain such evidence for the required time period.

The Court first notes that many of the disclosures to which Borrower has asserted entitlement were not actually required to have been provided to her.  As such, the Court will not place RBC in the untenable position of having to prove that it retained evidence of compliance with regulations that it did not, in fact, have to follow.

Second, to the extent that RBC did have to comply with certain portions of TILA, such as § 1638, Borrower does not possess a private right of action under the regulation.  Section 226.25 of Regulation Z does not provide a remedy to Borrower.  Instead, the regulation precludes a private right of action to enforce this section.  Section 226.25 expressly contemplates enforcement by an administrative agency.  Indeed, § 226.25(b) provides a right of inspection not to individual consumers but rather only to "the agency responsible for enforcing this regulation."

The Court's conclusion that the Borrower lacks standing to assert a violation of this particular regulation is supported by the practical concerns implicated by this case.  Assuming, *arguendo*, that CBN, now RBC, had fully complied with TILA and the provisions of Regulation Z, it would only have been required by § 226.25 to have retained evidence of such compliance

for two years after the date the disclosures were required to be made.  In a lawsuit based on a transaction that has gone stale (i.e., a suit filed after the two-year record keeping requirement), it is difficult to envision how a lender would defend itself against a charge of non-compliance, even if it had complied, unless it went above and beyond what the statute requires and maintained records for a longer period of time.  In cases where the lender did not retain evidence of compliance for longer than two years, the claim would be indefensible.

In sum, the Court finds that Borrower lacks standing to allege a violation of Regulation Z, § 226.25.  Accordingly, the Court finds in favor of RBC on Count V.

## VI.  Violation of FTC Act: 15 U.S.C. § 45(a) in Counts I, III, and IV

Borrower has alleged violations of the FTC Act in Counts I, III, and IV of her complaint. The Court need not address the merits of Borrower's FTC claims because it is well settled—both within this circuit and nationally—that the FTC Act does not provide individuals with a private right of action under the statute.  *See Jeter v. Credit Bureau Inc.*, 760 F. 2d 1168, 1174 n. 5 (11th Cir. 1985); *Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1306-07 (M.D. Fla. 2003) (noting that the FTC Act "'has never been construed to contain a private right of action'") (internal citations omitted); *In re McDonald*, 2004 WL 5859317 *5 (Bankr. W.D. Wash. May 4, 2004) (noting that an FTC claim would have to be brought before the appropriate federal agency, not the bankruptcy court in an adversary proceeding).  Accordingly, Borrower cannot prevail on her FTC Act claims.

## <u>Conclusion</u>

For the foregoing reasons, the Court finds in favor of Defendant, RBC on all counts and claims.  The Court will enter a separate judgment in favor of RBC.


**DONE AND ENTERED** in Chambers at Fort Myers on April 9, 2012.


BY THE COURT

_____
Barry S. Schermer
United States Bankruptcy Judge